IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ANITA RUFFIN, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) CASE NO. |
| VS. | ) |
| | ) |
| KALAMAZOO AREA CHRISTIAN | ) HON. |
| RETIREMENT ASSOCIATION, INC. | ) |
| | ) |
| DEFENDANT. | ) |
| | ) |
| | ) |

## COMPLAINT

PLAINTIFF ANITA RUFFIN, by and through her attorneys, Carla D. Aikens, P.L.C., submit the following Complaint against KALAMAZOO AREA CHRISTIAN RETIREMENT ASSOCIATION, INC.

## JURY DEMAND

COMES NOW PLAINTIFF ANITA RUFFIN and hereby makes her demand for trial by jury.

## JURISDICTION

1. At all times relevant to this complaint, Plaintiff Anita Ruffin was a resident of Kalamazoo County in the State of Michigan.

2. Defendant, Kalamazoo Area Christian Retirement Association, Inc., is a domestic non-profit corporation, with a continuous and systematic place of business located at 2920 Crystal Lane, Kalamazoo, MI 49009.

3. This action is brought in this Court on the basis of federal question jurisdiction, pursuant to the Fair Labor Standards Act.

1

4. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## VENUE

5. Venue is proper because the unlawful employment actions giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

6. Plaintiff is an African American woman.

7. At all times relevant to this Complaint, Plaintiff worked for Defendant at their nursing home.

8. While employed by Defendant, Plaintiff suffered harassment on the basis of her race.

9. Plaintiff noticed that white or Caucasian employees were not treated the same way, and that African American women were treated worse, often being fired for very minor things for which others were not fired.

10. On June 1, 2019, Plaintiff and a co-worker were in the breakroom early in the morning, after Plaintiff had been approached by an agent of Defendant who falsely claimed Plaintiff had been rough with a resident.

11. Plaintiff asked the co-worker if she were the one who had turned her in to the supervisor.

12. Plaintiff did not know which resident with whom she was being accused of being rough.

13. The co-worker – who was not African American – admitted she had reported Plaintiff because it was allegedly her job to report it.

14. Plaintiff did not see Plaintiff doing anything to a resident and it was told to her by another employee who had not told the truth for reasons unknown to Plaintiff.

15. Another co-worker came into the breakroom and got into an argument with the first co-worker because the first co-worker stated it was not just Plaintiff being rough but all of third shift.

16. Plaintiff told the first co-worker how she felt about her going to the boss about "hearsay."

17. Plaintiff never cursed at nor threatened the first co-worker.

18. Later on June 1, 2019, the social worker for Defendant called and told her that she had to take her off the schedule until Monday June 3, 2019 to have a meeting.

19. Plaintiff called the job at 11 a.m. on June 3rd and the manager Eric Hines stated to Plaintiff that he would get back with her at 11 a.m. the same day.

20. Plaintiff was called back by Mr. Hines who stated that he had to let her go because of the incident that happened on June 1, 2019.

21. Plaintiff stated that she did not do anything and Mr. Hines stated that she had threatened a co-worker and told her that the police would be called if Plaintiff came on the property.

22. Plaintiff said "OK," and he stated he would be sending her termination papers for her to sign and return back to Defendant in the mail, and to mail in her badge.

23. Plaintiff believes that she was wrongfully terminated on the basis of race.

24. Plaintiff received a written copy of complaints written by coworkers many months later, and one particular employee became upset that a different statement had been submitted on her behalf than she had drafted.

25. It included a statement that Plaintiff had said to the first co-worker that she would "see her in the street," which was false.

26. Plaintiff was also not properly paid wages according to the law, including improper payment of overtime wages.

27. Defendant claims there was a customer complaint and a write-up; however, Plaintiff was never given or shown either of those documents despite her requests to see them.

28. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT I

## VIOLATIONS OF FAIR LABOR STANDARDS ACT (MINIMUM WAGE, OVERTIME, AND RETALIATION)

29. Defendant was Plaintiff's employer as defined by the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 302(d).

30. Plaintiff was an employee of Defendant, as defined by FLSA. 29 U.S.C. § 203(e)(1).

31. Plaintiff was engaged in employment with Defendant, as defined by 29 U.S.C. § 203(g).

32. The burden is on Defendant to keep accurate records of the hours Plaintiff worked and the wages they were paid.

33. At all times, Plaintiff attended to her duties while on Defendant's premises.

34. Defendant's failure to keep proper records was intentional.

35. Further, Defendant failed to pay Plaintiff the federal minimum hourly wage, as established in 29 U.S.C. § 206.

36. Defendant failed to pay Plaintiff the state minimum hourly wage as established by Michigan law.

37. Further, Defendant failed to pay Plaintiff the required 1 1/2 times the amount of her hourly wage for every hour worked over 40 hours per week, in violation of 29 U.S.C. § 207(a)(1).

38. Defendant's failure to pay Plaintiff minimum wage and proper OT was intentional.

39. Plaintiff was not a salaried employee which would exempt Defendant from paying them overtime wages. 29 CFR 541.602.

40. Plaintiffs were never paid more than $684 per week or $35,568.00 which would exempt Defendant from paying Plaintiff overtime wages. 29 CFR 541.

41. Plaintiff was never paid any bonuses exempting Defendant from paying Plaintiff's overtime wages. 29 CFR 541.602(a)(3).

42. Defendant has the burden of establishing exemptions for not paying Plaintiff's overtime wages.

43. Defendant is not exempt from paying Plaintiff under the learned professional employee exception pursuant to 29 CFR 541.300(a).

44. Defendant is not exempt from paying Plaintiff under the executive employee exception pursuant to 29 CFR 541.100(a).

45. Defendant is not exempt from paying Plaintiff under the highly compensated employee exception pursuant to 29 CFR 541.601(a).

46. Defendant is not exempt from paying Plaintiff under the computer-employee exception pursuant to 29 CFR 541.400(b).

47. Defendant further harassed Plaintiff over claims related to Defendant's failure to pay minimum wage and overtime wages, in violation 29 U.S.C. 215.

48. Plaintiff engaged in protected activity under the FSLA.

49. Perceiving that an employee has participated in an investigation, as well as actually participating in an investigation of FLSA violations, is protected activity under the FLSA

50. Defendant suspected that Plaintiff was engaging in this protected activity; and/or were aware that Plaintiff had engaged in protected activity.

51. Defendant engaged in harassing, threatening, and retaliatory behavior in retaliation for Plaintiff's protected activity, including terminating them and accusing them of untrue allegations to prevent them from working there.

52. Plaintiff requests damages for Defendant's violations of wage and hour law and retaliation, as described in the Prayer for Relief below.

## COUNT II

### DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

53. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

54. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

55. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate an employee on the basis of that employee's race or skin color.

56. Plaintiff is an African American woman, and, as a result, is a member of a protected class pursuant to ELCRA.

57. Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

58. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

59. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

60. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs have sustained loss of earnings, earning capacity, and fringe benefits and have suffered

mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

61. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III
## WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY

62. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

63. It is the longstanding public policy of the State of Michigan that there are three exceptions to the employment at-will doctrine, and an employer can be found to be liable for wrongful discharge. They are:

> (1) explicit legislative statements prohibiting the discharge, discipline or other adverse treatment of employees who act in accordance with a statutory right or duty;
> (2) where the alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course or employment; and
> (3) where the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment.[1]

64. Plaintiff's discharge came as a result of Defendant's unwillingness to remedy the atmosphere and illegalities in its workplace, as conferred by well-established legislative enactments, specifically including, but not limited to, ELCRA and Title VII.

65. Moreover, every statute mentioned in the preceding paragraph contains explicit language that prohibits the discharge, discipline, or other adverse treatment of Plaintiff. However, Defendant apparently disregarded this and chose to pursue a policy of discrimination within its workplace.

66. As a result of Defendant's actions, and consequent harms caused, Plaintiff has suffered such damages in an amount to be proven at trial.

---

[1] *Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692, 695-96 (1982).

67. Plaintiff requests relief as described in the Prayer for Relief below.

## **RELIEF REQUESTED**

PLAINTIFF, ANITA RUFFIN, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory and pecuniary damages in whatever amount to which Plaintiff is entitled;

2. Exemplary and/or punitive damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  June 3, 2022

Respectfully Submitted,

/s/Carla D. Aikens
Carla D. Aikens (P69530)
CARLA D. AIKENS, P.L.C.
*Attorneys for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com